UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, | Petitioner/Counter-Defendant, |
| v. | Civil Action No. 3:14-cv-40-DJH-DW |
| C.F.L.P. 1, LLC, | Respondent/Counter-Claimant. |

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Respondent C.F.L.P. 1, LLC, doing business as Arcadia Apartments ("Arcadia"), has moved to rescind the appraisal clause from the insurance policy giving rise to this action.[1] (Docket No. 40) Because Arcadia has not shown that the appraisal process should be abandoned due to misconduct by Petitioner The Cincinnati Specialty Underwriters Insurance Company ("CSU") or for any other reason, its motion will be denied.

**I.    BACKGROUND**

This matter is before the Court pursuant to 9 U.S.C. § 5, which provides:

> If in [an agreement to arbitrate] provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

---

[1] Arcadia captions and refers to its motion as a "motion to rescind the appraisal process."

1

CSU issued a commercial property insurance policy to Arcadia effective June 1, 2011 to June 1, 2012. The policy sets forth the following procedure in the event the parties disagree regarding the amount of loss on a claim and one party demands an appraisal:

> [E]ach party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

(D.N. 7-2 at 1)

Arcadia, an apartment complex consisting of sixty-eight buildings, filed claims under the policy for damage resulting from a hail storm in late April 2012.[2] The initial claim, which pertained to roof damage, is not at issue in this case. (*See* D.N. 53 at 4) The second claim was for damage to siding on the apartment buildings. CSU issued a payment of $24,522.25 on the siding claim, and Arcadia disputed this amount. (D.N. 7-1 at 2)

Arcadia maintains that all of its buildings had siding damage and that CSU is required to pay for replacement of all the siding on all the buildings so that there will not be obvious differences between old (undamaged) siding and patches of new siding. (D.N. 53 at 2-3) According to Arcadia, siding panels are no longer available in the size originally used on the buildings, and replacing the faded damaged panels with new panels would result in an unsightly size and color discrepancy. (*Id.* at 5-6) CSU does not directly contest Arcadia's claim that siding panels are no longer available in the same size; however, it maintains that "comparable siding is available to replace the damaged siding" and that "[t]his is all that is required by the Policy and the law." (D.N. 62 at 13)

---

[2] Some of Arcadia's filings indicate that there are fifty-two buildings, but sixty-eight appears to be the correct number. (*See, e.g.*, D.N. 53-1 at 18-21 (Commercial Property Coverage Schedule listing coverage for sixty-eight buildings))

Because of this difference in opinion, the parties each chose an appraiser in accordance with the policy. CSU's appraiser, Marty Refka, appraised the loss at approximately $29,000, while Richard Michelson, Arcadia's appraiser, determined that the loss was more than $1,000,000. (D.N. 7-1 at 2) Refka and Michelson were unable to agree on an umpire, and so CSU filed this action petitioning the Court to appoint one. (D.N. 1) In its response to the petition, Arcadia asserted a counterclaim, alleging breach of the policy, violation of the Kentucky Unfair Claims Settlement Act, and bad faith. (D.N. 8 at 2-5 ¶¶ 9-24)

After responding to the petition and CSU's motion to appoint an umpire, Arcadia filed the instant motion, seeking to abandon the appraisal process altogether and instead "move forward to a jury trial." (D.N. 40 at 13) It argues that the appraisers' failure to select an umpire was the result of bad faith on CSU's part and that rescission of the appraisal clause is therefore warranted under Kentucky law. (*See id.* at 11-13) The Court disagrees.

## II.   ANALYSIS

The essence of the parties' dispute concerning appointment of an umpire is whether the person appointed must possess relevant subject matter expertise (e.g., loss appraisal), as CSU contends, or whether a retired judge or other mediator would be preferable. Arcadia argues the latter and maintains that CSU breached the parties' agreement by rejecting Arcadia's nominees and proposing candidates who have previously worked with insurance companies (and thus are "biased and/or potentially biased," in Arcadia's view). (D.N. 50 at 5) Arcadia contends that *Hartford Fire Insurance Co. v. Asher*, 100 S.W. 233 (Ky. 1907), and *Continental Insurance Co. v. Vallandingham & Gentry*, 76 S.W. 22 (Ky. 1903), support rescission under these circumstances. (D.N. 40 at 12-13) Both cases are distinguishable, however.

In *Asher*, as in this case, the insurance policies at issue provided for appointment of an appraiser by each party and joint selection of an umpire by the appraisers. *See* 100 S.W. at 233. However, the policies in *Asher* had no provision for appointment of an umpire in the event the appraisers disagreed. *See id.* In addition, the *Asher* court found that the insurance company had waived its right to appraisal by interfering in the umpire-selection process and appointing an obviously biased appraiser. *See id.* at 234.

Likewise, the policy in *Vallandingham* contemplated appointment of an umpire by the parties' respective appraisers but made no provision for what should occur if the appraisers did not agree. *See* 76 S.W. at 22-23. Furthermore, the insurers were found to have acted improperly in selecting their appraiser, whose "conduct throughout th[e] transaction was more like that of an employe[e] than of a disinterested person." *Id.* at 25. Notably, the court observed that the fact that the appraiser selected by the insurers "had served many times in that capacity before, and as many as three times before for one of the [insurers]," did not in itself indicate that the appraiser was biased. *Id.*

Unlike the policies in *Asher* and *Vallandingham*, the policy in this case specifically provides for what should happen in the event the appraisers cannot agree on an umpire: either party may petition the Court to appoint one.[3] This is not a case where the appraisal process has irreparably broken down; rather, by filing this action, CSU followed the procedure agreed to by Arcadia. Arcadia has not demonstrated that the Court's appointment of an umpire would be futile or inconsistent with the parties' agreement.

---

[3] The Court notes that both *Asher* and *Vallandingham* predate federal and state statutes authorizing courts to appoint umpires. *See* 9 U.S.C. § 5 (codified in 1947 and based on public law enacted in 1925); KRS § 417.070 (similar Kentucky statute enacted in 1984).

Moreover, Arcadia's argument that the appraisal process should be aborted because of bad faith on CSU's part is unpersuasive. Although the Court makes no finding at this juncture as to which, if any, of the parties' candidates should be appointed, CSU has cited legitimate reasons and authority for its position that an expert in the field would be best qualified. The fact that Arcadia disagrees with that position does not mean that CSU has acted improperly by adhering to it.

Nor has Arcadia provided convincing evidence of the candidates' supposed bias. With respect to the first candidate, Gilbert Arnold, Arcadia resorts to misrepresentation, attributing a customer review from a consumer-complaint website as "boast[ing]" by Arnold's company, Donan Engineering, that Donan "works for the insurance company." (D.N. 40 at 6; *see* D.N. 40-4 at 11 (screenshot from www.pissedconsumer.com)) And Arcadia's primary objection to the second candidate, Wayne Barnes, is that "it would be awkward" for Arcadia's appraiser and counsel "to deal with Mr. Barnes as the opposing adjuster in one case and as the Umpire in another case"—a reason entirely unrelated to CSU. (D.N. 40 at 7-8)

Regarding the third candidate, Jeff Turley, Arcadia merely asserts that he "is another person whose personnel serve as 'independent adjusters' solely for insurance companies" and that "[t]he nomination of Mr. Arnold and Mr. Barnes belies the argument of [CSU] that Mr. Turley is in a position to be neutral." (*Id.* at 8) As recognized in cases cited by Arcadia itself, an appraiser's past association with insurance companies does not automatically disqualify him from serving as an umpire. *See Figi v. N.H. Ins. Co.*, 166 Cal. Rptr. 774, 778 (Cal. Ct. App. 1980) (declining to hold "that an appraiser is necessarily 'interested' in violation of [a California statute requiring 'competent and disinterested' appraisers] because he has done business with the insurance company in the past"); *Vallandingham*, 76 S.W. at 25 (noting that the fact that the

appraiser selected by the insurance company "had served many times in that capacity before, and as many as three times before for one of the [insurers]," did not in itself indicate that the appraiser was biased). And Arcadia does not dispute CSU's assertion that Turley has also represented insureds. (*See* D.N. 50 at 3) Instead, in rambling fashion, it demands affirmative proof that Turley has no association with CSU whatsoever, even hypothetically: "CSU does not deny that the firm of which Jeff Turley is a part has not had in the past nor has at the present or could have in the future, as well as Mr. Turley could, be employed by CSU." (*Id.*)

Arcadia essentially asks the Court to presume that CSU has acted improperly and force CSU to prove otherwise. Such burden-shifting would be inappropriate. Nor does the Court agree that discovery is needed regarding CSU's "unverified claims of Clean Hands," as Arcadia suggests. (*Id.* at 6) In the absence of any evidence that CSU has conducted itself in bad faith, the Court will not authorize a fishing expedition to find some.

### III. CONCLUSION

Arcadia has not shown that the appraisal process should be abandoned. Accordingly, it is hereby

**ORDERED** that the motion to rescind (D.N. 40) is **DENIED**.

May 22, 2015

David J. Hale, Judge
United States District Court