UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14CV-00040-DJH

THE CINCINNATI SPECIALTY
UNDERWRITERS INSURANCE COMPANY                    PETITIONER

VS.

C.F.L.P. 1, LLC d/b/a/
ARCADIA APARTMENTS                                RESPONDENT


## MEMORANDUM OPINION AND ORDER

Two motions are presently before the Court. First is Respondent C.F.L.P. 1, LLC's, d/b/a Arcadia Apartments ("Arcadia"), Motion for Scheduling Order/Hearing on Bifurcated Claims. (DN 112). Second is Arcadia's Motion for Extension of Time to Respond to Petitioner The Cincinnati Specialty Underwriters Insurance Company's ("CSU") Motion for Summary Judgment. (DN 117). CSU has responded in opposition (DN 113; DN 118), and Arcadia has filed a reply (DN 120). For the following reasons, the Court **denies** both Arcadia's Motion for Scheduling Order and Arcadia's Motion for Extension of Time.

## Background

This case arises from a commercial property insurance policy issued by Petitioner CSU covering Respondent Arcadia's apartment complex in Louisville, Kentucky. In April of 2012, Arcadia reported a claim to CSU alleging that the roofs and siding of its apartment buildings were

1

damaged in a hail storm. CSU inspected the siding and issued a payment of $24,522.25 to cover the damage. Arcadia, however, disagreed with CSU's assessment and alleged the siding damage exceeded $1,000,000. As a result, CSU invoked the "appraisal" process from the insurance policy and appointed Marty Refka ("Mr. Refka") as an appraiser, who assessed the loss at $29,000. Arcadia eventually appointed Richard Michelson ("Mr. Michelson") as its appraiser, and he appraised the loss in excess of $1,000,000. Because the two appraisers could not agree on an umpire, CSU followed the insurance policy and petitioned this Court to appoint an umpire. (DN 1).

On February 21, 2014, Arcadia responded to CSU's petition and asserted four counterclaims, including (1) a request for reimbursement for damage to Arcadia's property caused by the April 2012 hailstorm; (2) CSU's violation of the Kentucky Unfair Settlement Claims Practices Act by nominating an improperly biased umpire; (3) a claim of common law bad faith; and (4) a request for a binding declaration that Arcadia was entitled to "cosmetic matching." (DN 8). Four months later, Arcadia filed a motion to rescind the appraisal clause of the insurance policy (DN 40), which the Court denied (DN 77).

After a year-and-a-half of contentious litigation, the Court granted CSU's motion to appoint an umpire and selected Jeff Turley ("Mr. Turley") to serve as the umpire in the case. (DN 78). The Court's Opinion also denied Arcadia's request for "cosmetic matching." (*Id.*). The parties then agreed to bifurcate Counts 2 and 3 of Arcadia's Counterclaim ("bad faith claims") until resolution of the umpire process. (DN 81). Arcadia, however, continued to object to Mr. Turley's appointment as umpire by filing both a motion to disqualify Mr. Turley (DN 82; DN 83) and a motion for reconsideration on the issue of rescinding the appraisal process (DN 85). Following these motions, the Court held a telephonic conference, in which Mr. Turley participated. (DN 98).

2

The Court questioned Mr. Turley regarding his ability to serve as an impartial umpire in resolving Arcadia's claim. (*Id.*). The Court ultimately determined that Arcadia failed to present a valid reason for altering its earlier decisions and denied both the motion to disqualify and motion for reconsideration. (DN 101).

By early 2017, Mr. Turley completed his inspection and issued an Appraisal Award valuing Arcadia's actual cash loss at $94,326.05. (DN 106-1). Mr. Turley and Mr. Refka expressed agreement with the Award and signed it. The Award became binding through their execution, pursuant to the policy's language. CSU has now issued payment to Arcadia for the Award amount.

Only Arcadia's bad faith claims (Counterclaims 2 and 3) remain at issue. Following a telephonic status conference on April 17, 2017, the Court directed the parties to file an agreed order of dismissal within fifteen days or, if the parties could not agree on a resolution, the parties would have twenty days to file dispositive motions. (DN 110). CSU filed a motion for summary judgment on Arcadia's remaining claims on May 22, 2017. (DN 111). In response, Arcadia requested the Court hold a conference and issue a scheduling order for the surviving counterclaims. (DN 112). CSU objected to Arcadia's requests, explaining that no conference or scheduling order is necessary because Arcadia's counterclaims fail as a matter of law. (DN 113).

Arcadia has also filed a motion for extension of time to respond to CSU's motion for summary judgment. (DN 117). Arcadia urges the Court to enter the earlier-requested scheduling order or, alternatively, grant Arcadia an extension of 120 days to take discovery pertaining to CSU's summary judgment motion. (*Id.*). Attached to Arcadia's motion is an affidavit from its counsel explaining that discovery in the form of interrogatories and document requests is necessary to obtain evidence of an "undue and improper relationship between CSU and its Umpire

3

nominees both before and after the litigation was filed[.]" (DN 117-1). CSU again opposes Arcadia's requests, explaining that the issue of whether Mr. Turley was a proper umpire has already been decided by this Court and Arcadia does not present compelling reason to reopen it. Arcadia replies that it should be allowed some discovery "beyond the questions asked by the Court in connection with its decision to appoint Mr. Turley as Umpire." (DN 120, at p. 3).

## Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Subsection (d) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed.R.Civ.P. 56(d). This Rule is intended to provide a mechanism for the parties and the Court "to give effect to the well-established principle that 'the plaintiff must receive 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment.'" *Cardinal v. Metrish*, 564 F.3d 794, 797 (6th Cir. 2009) (quoting *Short v. Oaks Corr. Facility*, 129 F. App'x 278, 281 (6th Cir. 2005) (additional citation omitted)); *see also Plott v. Gen Motors Corp.*, 71 F.3d 1190, 1195 (6th Cir. 1995) ("Before ruling on summary judgment motions, a district judge must afford the parties adequate time for discovery, in light of the circumstances of the case.").

The affidavit required by Rule 56(d) must "indicate to the district court [the party's] need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (citing *Radich v.*

*Goode*, 866 F.2d 1391, 1393-94 (3d Cir. 1989)); *Price v. AgriLogic Ins. Servs., LLC*, 37 F. Supp. 3d 885, 891 (E.D. Ky. 2014). The Sixth Circuit has clarified that a motion under Rule 56(d) may be properly denied where the requesting party "makes only general and conclusory statements [] regarding the need for more discovery," *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004) (citation omitted) (quoting *Ironside v. Simi Valley Hosp.*, 188 F.3d 350, 354 (6th Cir. 1999)), or where the affidavit or declaration "lacks 'any details' or 'specificity.'" *Id.* (quoting *Emmons v. McLaughlin*, 874 F.2d 351, 357 (6th Cir. 1989)).

Analysis

As an initial matter, Arcadia's affidavit offers only a vague explanation of what it hopes to uncover if additional discovery is permitted. Arcadia's affidavit states:

> [P]laintiff will attempt to obtain the discovery outlined in its herein response of CSU for summary judgment including and without limitation the discovery voluntarily requested to be recused at DN 82 pages 11-12 and the interrogatories and document requests propounded by Arcadia to CSU (DN 87-1) to obtain evidence that there was an undue and improper relationship between CSU and its Umpire nominees both before and after this litigation was filed, of such a nature that Arcadia can establish its extra-contractual counter claims. Arcadia does not hereby limit itself from obtaining other discovery.

(DN 117-1). Arcadia's references to prior pleadings and broad statement that it wants to obtain evidence "of an undue and improper relationship between CSU and its Umpire nominees" are conclusory and, therefore, insufficient to satisfy Arcadia's burden under Rule 56(d).

Even after reviewing the pleadings that Arcadia's affidavit cites, its motion to disqualify Mr. Turley as umpire (DN 82) and Exhibit 1 to its reply to such motion (DN 87-1), the Court is still not persuaded that Arcadia is entitled to additional discovery in this case. Arcadia's motion to disqualify Mr. Turley stated that:

5

> The issues on discovery would include amongst others how many claims the parent NCA Group process [sic] for CSU, whether after all of this Mr. Turley himself has ever processed a CSU claim, how much money is involved, how committed Mr. Turley's TURCO company and NHI are to CSU, how many claims have been processed for CSU by NHI and TURCO, whether Mr. Turley really has represented insureds to their satisfaction in past disputes and really has been fair on the number of occasions when Mr. Turley has been the Umpire in dispute, whether the parties thereto really do feel that it is fair, what relationship Mr. Turley has with CSU Appraiser Martin Refka, and on and on.

(DN 82, at pp. 11-12).

Similarly, the previous interrogatories propounded by Arcadia focus on the claims CSU processed from 2011 to 2015, the interests of Mr. Turley in CSU and NCA Group, the amount of money CSU paid to TURCO since 2011, Mr. Turley's qualifications, CSU's knowledge about Mr. Turley's appraisals since 2011, CSU's knowledge of plaintiffs' satisfaction with Mr. Turley as an umpire, and etc. (DN 87-1). Arcadia's prior requests for production broadly sought all documents reviewed in connection with providing answers to the aforementioned interrogatories. (*Id.* at pp. 8-9).

These topics have already been addressed by the Court in its rulings on whether Mr. Turley should serve as umpire. For instance, the Court's Memorandum Opinion and Order at DN 78 explained that Arcadia's objections to CSU's three candidates for umpire, including Mr. Turley, were "largely without substance." (DN 78, at p. 13). The Court explained that even though the first candidate, Gilbert Arnold, should be disqualified based on his company's current engagement by CSU in another matter, none of the three nominees were "obviously biased in favor of insurance companies[.]" (*Id.* at pp. 13-14). Regarding Mr. Turley specifically, the Court noted that neither an appraiser's past association with insurance companies nor general objections of bias were sufficient grounds for disqualification. (*Id.* at p. 14).

Additionally, on March 16, 2016, after Arcadia sought disqualification of Mr. Turley and reconsideration of whether to rescind the appraisal process, the Court held a telephonic conference and questioned Mr. Turley regarding his ability to serve as an impartial umpire in the matter. (DN 98). After the parties briefed their positions as to Mr. Turley's appointment, the Court again ruled that Mr. Turley could serve as an impartial umpire in this matter. The Court noted, among other things, that NCA Group, which handles claims for CSU, is not Mr. Turley's employer, that Mr. Turley plays no role in selecting his appraisal assignments, that Mr. Turley's compensation is not tied to NCA Group, and that Mr. Turley would suffer no adverse consequences if he ruled against CSU in the matter. (DN 101).

Because the information that Arcadia presently seeks to support its "bad faith" counterclaims has already been discovered through the Court's questioning of Mr. Turley and discussed in the Court's prior rulings as to whether Mr. Turley was a biased umpire and whether he should be disqualified, the Court finds Arcadia has put forth no compelling justification for an extension of discovery. Arcadia is merely rehashing questions and topics that have been addressed ad nauseam in the Court's previous rulings. Arcadia's failure to demonstrate the need for discovery coupled with its conclusory affidavit compels the Court to deny Arcadia's requested extension to take additional discovery pertaining to CSU's summary judgment motion.

For these same reasons, the Court finds it is not necessary at this time to conduct a scheduling conference or issue a scheduling order on Arcadia's remaining counterclaims. If Arcadia's counterclaims survive the Court's ruling on summary judgment, Arcadia will then be permitted to seek a scheduling conference.

ORDER

**IT IS HEREBY ORDERED** that Arcadia's Motion for Scheduling Order (DN 112) is **DENIED** without prejudice in light of CSU's pending Motion for Summary Judgment.

**IT IS FURTHER ORDERED** that Arcadia's Motion for Extension of Time to File Response/Reply to CSU's Motion for Summary Judgment (DN 117) is **DENIED**.

Copies: Counsel of Record